UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA S. NOIROT,

    Plaintiff,

v.                                                                                          Case No. 1:24-cv-177

COMMISSIONER OF SOCIAL                                      Hon. ROBERT J. JONKER
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

    Plaintiff filed an application for DIB on June 5, 2021, alleging a disability onset date of March 10, 2021. PageID.34. Plaintiff identified her disabling conditions as epilepsy, central tremors, anxiety, and headaches. PageID.212. Plaintiff completed the 11th grade and had past relevant employment as a hospital cleaner. PageID.49. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on March 17, 2023. PageID.34-51. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

    **I.**    **LEGAL STANDARD**

    "The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision

is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.[1]  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date

---

[1] At step four, the ALJ found that "[t]he claimant is capable of performing past relevant work as a Hospital Cleaner." PageID.49. At that point, plaintiff was determined to be not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv). However, the ALJ proceeded to step five where he made a further determination that "[i]n addition to past relevant work, there

of March 10, 2021, and meets the insured status requirements of the Social Security Act through September 30, 2026. PageID.36. At the second step, the ALJ found that plaintiff had severe impairments of a seizure disorder with headaches and anxiety. PageID.36. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.38.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can never climb ladders, ropes, or scaffolds; she cannot work around hazards such as unprotected heights or unguarded, moving machinery; she cannot work at jobs that require commercial driving; she can frequently climb ramps and stairs; she can occasionally interact with co-workers, supervisors, and the public; she is limited to jobs with no production rate work (such as on an assembly line); and jobs can have only occasional changes in the workplace setting.

PageID.40.

---

are other jobs that exist in significant numbers in the national economy that the claimant also can perform." *Id*. The Court finds no authority for an ALJ to find a claimant disabled at step four and then make an unnecessary determination of disability at step five. Here, the ALJ was required to end the evaluation at step four and find that plaintiff was not disabled:

> (4) *The five-step sequential evaluation process*. The sequential evaluation process is a series of five 'steps' that we follow in a set order. See paragraph (h) of this section for an exception to this rule. **If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.** If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow: . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. **If you can still do your past relevant work, we will find that you are not disabled.** See paragraphs (f) and (h) of this section and § 404.1560(b).

20 C.F.R. § 404.1520(a)(4)(iv) (emphasis added). *See, e.g., Patricia T. v. Kijakazi*, No. 21-CV-1028 (GMH), 2022 WL 3583634 at *2, fn. 5 (D.D.C. Aug. 22, 2022) ("If the claimant can perform his or her past relevant work, a finding of 'not disabled' is required.") (citing 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv)). Because the ALJ's determination at step five is not authorized by the regulations, the Court will not address that finding.

The ALJ also found that plaintiff is capable of performing past relevant work as a hospital cleaner. PageID.49. This work does not require the performance of work-related activities precluded by her residual functional capacity (RFC). *Id*. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from March 10, 2021 (the alleged onset date) through March 17, 2023 (the date of the decision). PageID.50-51.

### III.    DISCUSSION

Plaintiff raised three errors.[2]

### A.    The ALJ committed reversible error by failing to find that plaintiff met medical listing 11.02.

Plaintiff contends that she is disabled under Listing 11.02 (Epilepsy). Here, the ALJ found that plaintiff did not meet the requirements of that:

> None of the claimant's impairments meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). In making this conclusion, I considered the claimant's seizure disorder under listing 11.02. In a prehearing memorandum, the claimant's attorney, Mr. Rabideau, argued that his client's seizure disorder satisfies the severity requirements of this listing, although he did not provide any actual support for this conclusion (Exhibit 18E/4). During the hearing, Mr. Rabideau did not raise any arguments that the claimant's seizure disorder met listing 11.02.
>
> I find that the severity requirements of listing 11.02 is [sic] not met or equaled, as the evidence of record does not document the frequency of seizures required by this listing despite adherence to prescribed treatment. The evidence of record also fails to establish at least one "marked' limitation in the claimant's physical functioning or four other areas typically referred to as "paragraph B" limitations.
>
> Moreover, no treating or examining physician has cited findings equivalent in severity to the criteria of any listed impairment, nor does the evidence otherwise establish medical equivalency.

PageID.38-39.

---

[2] Plaintiff set out her arguments in a single narrative. Plaintiff's Brief (ECF No. 10, PageID.1028-1032).

Plaintiff contends that the ALJ erred in failing to find her disabled under Listing 11.02. "When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir. 2004). Here, plaintiff has failed to meet her burden. In this regard, plaintiff does not address the requirements of Listing 11.02. Rather, plaintiff states,

> [Plaintiff] does not meet Medical Listing 11.02 because, in the ALJ's words, she does not meet the B criteria for that listing (PageID.38-39). Nice try, but 11.02A and 11.02B do not appear to require a plaintiff to meet the B criteria."

Plaintiff's Brief (ECF No. 10, PageID.1029). Listing 11.02 consists of four subsections (11.02 A, B, C, and D). The ALJ's reference to "paragraph B" is not a model of clarity. However, plaintiff does not demonstrate that she meets the requirements of any particular subsection of Listing 11.02. Accordingly, plaintiff's claim of error should be denied.

### B. The ALJ committed reversible error by failing to consider plaintiff's impairment of essential tremors as a severe impairment.

Plaintiff contends that the ALJ erred by failing to address her essential tremors as a severe impairment. As discussed, the ALJ found that plaintiff had severe impairments of a seizure disorder with headaches and anxiety. PageID.36. Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from at least one severe impairment, the ALJ "will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe,

6

in determining [the claimant's] residual functional capacity". 20 C.F.R. § 404.1545(e). *See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018).

The ALJ acknowledged that the medical record referred to a diagnosis of essential tremors and addressed that record at length. PageID.37-38. Ultimately, the ALJ concluded "that tremors, even when considered in combination with the claimant's other ailments, warrants no more than minimal long-term work restrictions." PageID.38. In reaching this determination, the ALJ noted that plaintiff received treatment for the tremors and that,

> [B]y January 2022, less than 12 months after the alleged onset date, it is notable that neurological findings were no longer describing overt tremors or voiced complaints from the claimant of ongoing tremors (Exhibit 6F/13-14 and17-18). This lack of continued findings or complaints suggests that periodic medication adjustments were gaining effectiveness. Later records only rarely refer to tremors and no records appear consistent with the extremely severe dysfunction that the claimant attributes to tremors.

PageID.37.

Consistent with 20 C.F.R. § 404.1545(e), the ALJ considered the tremors while evaluating plaintiff's RFC. *See* PageID.38 ("I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."). In this regard, the ALJ referenced the plaintiff's reported tremors and treatment of the tremors multiple times while evaluating the RFC. *See* PageID.41-46, 48. Accordingly, this claim of error should be denied.

> **C. The ALJ violated 20 C.F.R. § 404.1520c during the evaluation of the evidence because he failed to properly consider the mandatory factors of supportability and consistency.**

Plaintiff also contends that the ALJ failed to properly evaluate the opinions of Jane Visser, N.P. and Paul Kitchen, Ph.D. The applicable regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling

7

weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency."  20 C.F.R. § 404.1520c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

In addition, the regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we

8

considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id.*

### 1.     Plaintiff's testimony

The ALJ summarized plaintiff's testimony regarding her medical condition and limitations as follows:

> During the hearing, the claimant testified that seizure activity primarily prevents her from working. She said that she experiences 3-5 seizures per month. She reported taking daily antiseizure medication. She described a typical seizure as consisting of confusion, head jerking, falling, body shakes, eyes rolling back, biting her tongue, and on occasion wetting herself. She further claimed that stress can at time trigger a seizure event. She reported several postictal symptoms after a seizure including fatigue, fogginess, off speech, and migraine headaches. I note that while the claimant testified to a very wide range of issues during a seizure, many of these reported issues are simply not reflected in the records including urinary incontinence, tongue biting, falls, or full body jerking. The claimant also reported having 2-3 migraine headaches per month, which necessitates her spending time in a darkened room. She further claimed that she forgets to take medication due to a poor memory.
>
> Along with alleging very severe and frequent seizures, the claimant also testified to tremors at her hands, voice, and legs. She further alleged anxiety but acknowledged that recent medication was beneficial in controlling her problems. She also explained that she was not currently receiving outpatient counseling for anxiety.
>
> As for daily activities, she reported several deficits that she attributed to her various medical problems including difficulty holding objects or manipulative activities due to tremors. She also reported problems writing and performing many of her personal hygiene activities due to tremors. She also claimed to have problems dressing because her hands shake. She also claimed that she had problems performing most household tasks because of physical issues and deficits in memory/concentration. She also reported difficulty watching television or read [sic] due to poor concentration and focus. She claimed that she avoids leaving her home alone due to concerns for seizures. The claimant said that she does not have a driver's license due to her seizure condition.

> As for work-related activities, the claimant's testimony suggests problems lifting or carrying due to tremors. She did not describe any significant issues spending time on her feet or sitting for prolonged periods. Her testimony further suggests the need for environmental safeguard. She further alleged many manipulative difficulties. She also reported deficits in memory, concentration, and focus along with reduced stress tolerance. She did not allege any substantial problems getting along with others.

PageID.45-46.

### 2.     N.P. Visser

N.P. Visser provided a sworn statement on January 23, 2023, regarding plaintiff's medical condition. *See* Exhibit 10F, PageID.1003-1011. Visser stated that she has treated plaintiff for 10 to 15 years. PageID.1005. Visser described plaintiff as a compliant patient, who has been honest and straightforward in presenting complaints. PageID.1006. Plaintiff's most significant medical problems involve a seizure disorder, "familial or essential tremor", migraines and anxiety. *Id*. While plaintiff "doesn't tolerate a number of medications" and "has quite significant side effects," she takes Fycompa and Lamictal for seizures. PageID.1005-1006. Plaintiff does not take anything specifically for migraines or tremors. *Id*. Visser explained that "we have tried everything that is out there, she has not tolerated." *Id*.

> When asked, "[i]s the seizure disorder controlled?", N.P. Visser responded:
>
> My understanding, she has been working with neurology to try to better control it because she has been having a lot of breakthrough seizures over the last year. Given that we -- how to phrase this. She had been very well controlled, and then her boyfriend, who she lives with, began to observe things that he was wondering if they could be seizures, but it is very hard for a patient who has the seizures always to recognize, "I was staring off into space for a few minutes and I didn't even realize it." So about a year ago, he came in and started having conversations with me and her about could this be seizure activity, and I was like, "Well, yes, it certainly could," so it took her a bit to get back in to see her neurologist, and they have been working on things since then. Sounds like she has been having, you know, three to five seizures still per month.

PageID.1006-1007.

N.P. Visser described plaintiff's migraine disorder as a headache which increases her stress and tremor and "makes it even more difficult for her to function, so when she gets a migraine that all just cycles worse and worse and makes her unable to work." PageID.1007-1008. Visser described plaintiff's tremors as involving her hands, her head, and her voice. PageID.1008. "[T]he more fatigued she becomes or the more anxious she becomes, the more accentuated these things will be and the more they will make her unable to complete tasks, complete them in a satisfactory manner and complete them in a timely manner." *Id*. With respect to anxiety, Visser stated that plaintiff "hasn't tolerated meds for anxiety" and that it is "not so much biochemical anxiety as it is situational," and that the anxiety exacerbates her other health issues. PageID.1008-1009.

When counsel asked whether plaintiff could perform light work (lifting no more than 20 pounds occasionally and ten pounds frequently), eight hours a day, five days a week, N.P. Visser was not sure that plaintiff could sustain the lifting over that period of time. PageID.1009. Ultimately, Visser concluded that, "[n]o, she is going to be out with seizures and headaches on a somewhat regular basis," which Visser estimated at three to seven days per month. PageID.1009-1010. When asked if plaintiff would need additional work breaks, Visser stated:

> Potentially, but more specifically, the tremor, it will worsen as she fatigues, and the more she fatigues, she would be less able to do things. So resting would be her only potential for getting that to improve enough so that she could continue to work.

PageID.1009-1010. When asked for a prognosis, N.P. Visser stated, I hope that she will be stable for many years, but in all likelihood, this will only worsen with time." PageID.1010.

The ALJ addressed Nurse Visser's opinions as follows:

> I find that Nurse Visser's January 2023 deposition is not persuasive (Exhibit 10F). In this deposition, Nurse Visser's referred to very significant deficits stemming from tremors, seizure disorder, migraines, and anxiety. Among other

11

> things she opined that the claimant would miss up to 7 days of work per month and would need unscheduled breaks. She further suggested that the claimant would not be able to repetitively lift up to 20 pounds, although she did not provide a clear objective basis for this recommendation. I find that these concerns are not reflective of the claimant's generally benign medical treatment history, including Nurse Visser's own treatment records, which have consisted of routine medication management and few positive physical findings. Moreover, the level of dysfunction suggested by this deposition is not reflected in records from epileptic clinic, which has described no substantial deficits, less than ideal medication compliance, and recent improvement of seizures following a medication adjustment. In addition, several of Nurse Visser's concerns are vague, such as the need for more breaks. Additionally, her statements that the claimant is unable to work are conclusions reserved for the Commission. While this deposition is not persuasive it is notable that Nurse Visser primarily described the claimant's seizures as consisting of her being unresponsive for several minutes, which in no way reflect the nature and severity of seizures alleged during the hearing.

PageID.48.

Plaintiff contends that the ALJ's evaluation of NP Visser was not adequate because the ALJ rejected Visser's opinions "for completely specious reasons" and that "[t]o counter and discredit that testimony, the ALJ recited normal findings and avoided the obvious meanings of the positive ones." Plaintiff's Brief at PageID.1030-1031. Contrary to plaintiff's contention, the Court concludes that the ALJ's evaluation of N.P. Visser's opinions is supported by substantial evidence.

The ALJ's decision reviewed plaintiff's treatment from October 2020 through January 4, 2023.  PageID.41-44. The crux of plaintiff's claim is whether the frequency and nature of her seizures renders her disabled.[3]   In his decision, the ALJ reviewed plaintiff's treatment with N.P. Visser from February 2021 through June 2021.  PageID.41-42.  Plaintiff reported no seizure activity in April 2021, but on June 7, 2021, reported up to three seizures per month.  PageID.42.

Plaintiff's treatment moved to P.A. Slager at the Hauenstein Neurosciences Epilepsy Clinic, who examined plaintiff on June 21, 2021.  PageID.42.  Plaintiff denied seizure

---

[3] As discussed, plaintiff contends that her epilepsy is so severe that she should be disabled under Listing 11.02.

activity since her last medical visit and estimated having a seizure about once every three weeks. *Id*. P.A. Slager diagnosed plaintiff with generalized epilepsy. PageID.42, 582.

On September 22, 2021, plaintiff reported 3-4 events. PageID.42. P.A. Slager adjusted medications and recommended seizure precautions. PageID.42-43, 604.

In January 2022, plaintiff reported "few" recent seizures including seizure-like episodes of eye twitching and brain fog, which P.A. Slager thought were consistent with non-epileptic episodes. PageID.43, 683.

On April 20, 2022, plaintiff complained of seizures which she attributed to increased stress, but also reported improvement following the latest medication adjustment. PageID.44. P.A. Slager discussed her improvement noting "[w]ith respect to her seizure control, as she remains hesitant about medication changes while enjoying some improvement in seizure frequency, I agree with [plaintiff] that it is reasonable to stay at her current dose." PageID.700.

In October 2022, plaintiff reported 10 episodes in the last month, which occurred at night, witnessed by her boyfriend, and described as stiffness and shaking of extremities for no more than three minutes. PageID.44. However, plaintiff also "acknowledged that she had missed several doses, which could possible account for her reported increased [sic] in frequency of seizures." *Id*. P.A. Slager noted "I sense there may be some anxiety/non-epileptic contribution to her episodes" and "I cannot exclude that she is forgetting her doses and this is provoking her seizures as she admits to frequently missing medication." PageID.985.

On December 5, 2022, plaintiff reported adverse effects after a change in medication and dosage, and that she stopped taking medication a few days before the visit. PageID.44. P.A. Slager started plaintiff on a new medication (Fycompa) later that month. PageID.977.

13

On January 4, 2023, P.A. Slager saw plaintiff for a medication follow-up visit. PageID.44. Plaintiff reported tolerating the recent change to Fycompa with no substantial issues. *Id.* P.A. Slager recommended increasing the Fycompa dosage given the lack of side effects. *Id.*

In summary, substantial evidence supports the ALJ's finding that N.P. Visser's opinions were not persuasive, *i.e.*, the level of dysfunction suggested by Visser is not reflected in records from epileptic clinic. Accordingly, plaintiff's claim of error with respect to N.P. Visser should be denied.

### 3. Dr. Kitchen

Dr. Kitchen evaluated plaintiff on November 16, 2021. Exhibit 4F (PageID.628-632). The doctor made a number of findings. With respect to attitude/behavior, the doctor stated:

> The client demonstrates an adequate contact with reality and reports a low level of self-esteem. Her gross motor activity was unknown, but she was noted to have significant tremors throughout her entire evaluation. She appears to be dependent on others for many of her basic needs, and demonstrates adequate levels of insight.

PageID.630.

With respect to stream of mental activity, the doctor found "[t]he client's mental activity was spontaneous and well-organized." *Id.* With respect to mental trend/thought content, the doctor found that:

> The client denies any history of hallucinations, delusions, persecutions, obsessions, or unusual powers. She also denies that others control her thoughts. When questioned about suicide, the client states that she last considered suicide two days before this evaluation. She denies any history of suicide attempts.

PageID.631. The doctor also found that plaintiff's emotional reaction was "anxious". *Id.* The doctor gave the following prognosis:

> The client presents as a neat and reasonably groomed individual. She is likely to have mild problems understanding, remembering, and applying information. She will have moderate to marked problems with concentration,

14

persistence, and pace, and will also demonstrate moderate to marked problems with social interaction skills.  She will have great difficulty adapting to changes in the world around her.  Her overall prognosis is considered poor.

PageID.632.

The ALJ addressed Dr. Kitchen's opinion as follows:

> I find Dr. Kitchen's psychological consultative evaluation report is no more than partially persuasive (Exhibit 4F). Arguably, Dr. Kitchen's conclusions suggest that the claimant may be incapable of competitive employment given that he indicated moderate t [sic] marked problems with concentration, persistence, and pace along with indicating moderate to marked problems with social interaction skills and that the claimant would have "great difficulty" adapting to changes in the world around her (*Id* at 6).  However, Dr. Kitchen's assessment is vague and does not utilize vocationally relevant terminology, which detracts from the overall persuasiveness of his conclusion. Moreover, as discussed above, Dr. Kitchen's concerns must also be viewed with a grain of salt given the near complete lack of any mental health treatment and lack of substantial clinical findings from Dr. Kitchen and various medical providers. Such factors strongly suggest that Dr. Kitchen's overall conclusions rely quite heavily on subjective reporting made by the claimant, as opposed to clinical evidence.  Consequently, Dr. Kitchen's opinion is no more than partially persuasive.  Nonetheless, I have addressed many of Dr. Kitchen's concerns by limiting the claimant to a reduced stress environment with limited social interaction. However, I stress that greater mental restrictions are simply nor supported by the claimant's overall medical treatment history.

PageID.48-49.

Plaintiff contends that the ALJ gave no good reasons to ignore Dr. Kitchen's findings "outside of saying that there were some benign findings in other examinations." Plaintiff's Brief at PageID.1031.  The Court disagrees with this contention.  The ALJ found Dr. Kitchen's opinions to be partially persuasive, and accounted for some the mental limitations in the RFC, *i.e.*: plaintiff can "occasionally" interact with co-workers, supervisors, and the public; plaintiff is limited to jobs with no production rate work; and, those jobs can have only "occasional changes in the workplace setting."  *See* PageID.40.  In addition, the ALJ pointed out that the doctor's opinion was vague and did not utilize vocationally relevant terminology.  Finally, the ALJ noted that plaintiff's lack of mental health treatment and substantial clinical findings strongly

15

suggested that Dr. Kitchen's conclusions relied "quite heavily" on plaintiff's subjective reports as opposed to clinical evidence. This is an appropriate observation. *See Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 629 (6th Cir. 2016) ("a doctor cannot simply report what his patient says and re-package it as an opinion"). Accordingly, plaintiff's claim of error with respect to Dr. Kitchen should be denied.

## IV.  RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: February 10, 2025                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).