UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA S. NOIROT,

       Plaintiff,

v.

       CASE No. 1:24-CV-177

       HON. ROBERT J. JONKER

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Kent's Report and Recommendation (ECF No. 13) and Plaintiff's Objection to the Report and Recommendation. (ECF No. 14). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the

Report and Recommendation itself; and Plaintiff's objections. After its review, the Court determines the Report and Recommendation is factually sound and legally correct.

The Magistrate Judge recommends affirming the Commissioner's decision. In her objections, Plaintiff primarily reiterates narrative arguments presented in the original brief. In this, Plaintiff largely fails to address or wrestle with the Magistrate Judge's reasoning and cited case law. Be that as it may, the Court addresses the objections below.

1. *Severe Impairment*

The Court begins with Plaintiff's third claim of error, which is that the ALJ erred at step two by failing to find that that Plaintiff's tremors constituted a severe impairment. The Magistrate Judge pointed out that the ALJ proceeded to consider Plaintiff's severe and non-severe impairments alike at the subsequent steps of the analysis and thus it was legally irrelevant that the ALJ failed to find additional severe impairments at step two. (ECF No. 13, PageID.1061-1062). The Court agrees. Nothing in Plaintiff's objections changes anything. At most, Plaintiff points to evidence from which the ALJ could have found these conditions were severe impairments and she argues the ALJ should have crafted a different RFC to account for her tremors. But that does not mean that the ALJ's step two decision or the subsequent RFC finding is not supported by substantial evidence.

2. *Listing 11.02*

But what Plaintiff is really arguing about in the remaining two objections is that the ALJ should not have gotten to the RFC determination at all because the ALJ should have first found Plaintiff met the requirements of Listing 11.02 at Step 3. As the Magistrate Judge properly recognized, it is Plaintiff's burden to prove that she has an impairment that meets or medically equals a Listing. *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). Plaintiff

2

does not do so here.   Instead, in the briefing Plaintiff's counsel lobs invective at the ALJ.   That does not help anybody.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled.   At step three of the sequential disability analysis, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment.   Here, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any listed impairment. (PageID.47–48.)   In so doing, the ALJ identified Listing 11.02. Plaintiff contends the ALJ's analysis of this listing was deficient.   The ALJ's discussion of this listing is as follows:

> I find that the severity of the requirements of listing 11.02 is not met or equaled, as the evidence of record does not document the frequency of seizures required by this listing despite adherence to prescribed treatment.   The evidence of record also fails to establish as least one "marked" limitation in the claimant's physical functioning or four other areas typically referred to as "paragraph B" limitations."

(ECF No. 6-2, PageID.39).

A. "Marked Limitation"

The second half of the above discussion is the focal point in the underlying papers.   The Magistrate Judge commented that the reference to the paragraph B limitations is not a model of clarity.   (ECF No. 13, PageID.1061).   And in the objections, Plaintiff also seizes on this as an "obvious error" that requires reversal.   (ECF No. 14, PageID.1075).   Plaintiff's counsel is even more brash in the underlying briefing.   (*See* ECF No. 12, PageID.1050).   Counsel's bluster notwithstanding, the ALJ's reasoning here is obvious and there is nothing requiring remand on this point.   As the Magistrate Judge correctly points out, Listing 11.02 contains several subparts. Nowhere—not in the record before the ALJ, the initial brief, the reply brief, or in the objections—

does Plaintiff identify a specific subpart that Plaintiff believes is met. So the ALJ clearly evaluated all possible bases. In pertinent part, subparts C and D of the listing require, *inter alia*, that a plaintiff demonstrate a "marked limitation" in one of the following: 1) physical functioning; 2) understanding, remembering, or applying information, 3) interacting with others, 4) concentrating, persisting, or maintaining pace; and adapting or managing oneself. The latter four criteria obviously align with the "paragraph B" criteria that are more commonly found in Chapter 12 of the listings. The ALJ perhaps could have written more, but there was no error when the ALJ referenced the paragraph B criteria as a shorthand in evaluating whether Listing 11.02—and all its subparts—had been met. Plaintiff's counsel was wrong to brazenly claim otherwise. And Plaintiff does not claim to be able to meet these criteria.

### B. *Frequency Despite Adherence to Prescribed Treatment*

It is true that subparts A and B of Listing 11.02 do not require a plaintiff to demonstrate a marked limitation like subparts C and D do. But no one—including the ALJ—claimed to the contrary. The ALJ's use of the word "also" makes clear the ALJ found two independent reasons why the Listing had not been met. The first basis the ALJ articulated was that the requisite frequency of seizures despite adherence to prescribed treatment was not met. Shorn of all the rhetoric, that is the point of contention here. The ALJ's determination that Plaintiff failed to demonstrate the requisite frequency of seizures *despite adherence to prescribed treatment* is supported by substantial evidence. There is no basis for reversal or remand here.

By way of background, Subpart A of Listing 11.02 requires evidence of "[g]eneralized tonic-clonic seizures . . . occurring at least once a month for at least 3 consecutive months . . . despite adherence to prescribed treatment." Subpart B requires evidence of "[d]yscognitive seizures . . . occurring at least once a week for at least 3 consecutive months . . . despite adherence

4

to prescribed treatment[.]"  "'Despite adherence to prescribed treatment' means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment."  *Id.* at § 11.00C.  The Commissioner does "not count seizures that occur during a period when you are not adhering to prescribed treatment without good reason."  *Id.* at § 11.00H.4.d.  This includes instances where treatment is "very risky" or an inability to afford the medication and for which there are no free community resources available.  *Id.*  The Commissioner follows other guidelines set out in Sections 404.1530(c) and 416.930(c) when determining whether a claimant has a good reason for not adhering to prescribed treatment.  The Listing further provides that the three-month period "cannot begin earlier than one month after you began prescribed treatment" and that the requisite number of seizures "must occur within the period we are considering in connection with your application."  *Id.* at § 11.00H.4.

      The above discussion plainly disposes of Plaintiff's argument with respect to the non-examining physicians.  Plaintiff contends that the fact "she had undergone recent prescription changes . . . are hardly definitive reasons for determining that Plaintiff did not meet the listing." (ECF No. 14, PageID.1076).  To the contrary, they are very much relevant considerations under the Listing's requirements.  And ultimately, the ALJ's observation that Plaintiff failed to document the requisite number of seizures despite adherence to prescribed treatment is supported by substantial evidence.  In the briefing, counsel admits that Plaintiff "sometimes may have forgotten to take her medication . . . [and] had a great deal of trouble with coordinating her prescriptions for her epilepsy and her tremors."  (ECF No. 14, PageID.1074).  Indeed, the ALJ's extensive discussion of Plaintiff's medical records is replete with references to records that

5

document Plaintiff did not follow prescribed treatment for her seizures. For example, in an October 26, 2022, treatment note, William Slager, a Neurology Physician Assistant, remarked that Plaintiff's descriptions of her seizures were consistent with "typical generalized tonic-clonic seizures. However, I sense that there may be some anxiety/non-epileptic contribution to her episodes. Additionally, I cannot exclude that she is forgetting her doses and this is provoking her seizures as she admits to frequently missing medication." (ECF No. 6-12, PageID.986). This was something Mr. Slager had been concerned about before. For example, in a June 21, 2021, treatment note (a few months after the alleged onset date). Mr. Slager wrote that Plaintiff was not in agreement with his recommended treatment plans, including medication, because "she is anxious about side effects." Mr. Slager stated, "I recommend that she and her fiancé deliberate on this as I explained that the risks of sudden death should at least be weighed against *possible* side effects." (ECF No. 6-9, PageID.582) (emphasis in original).

It is Plaintiff's burden—here with the assistance of experienced counsel—to come forward either with a medical opinion that she meets or medically equals a listing, or with medical evidence demonstrating the same. Plaintiff has not done so here, and the ALJ's determination that Plaintiff does not meet or medically equal a listing is supported by substantial evidence.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 17) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that the Commissioner's decision is **AFFIRMED.** A separate Judgment shall issue.

Dated:   March 3, 2025            /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                                UNITED STATES DISTRICT JUDGE